T. W. HOLT & COMPANY *v.* UNITED STATES (No. 4747)[1]

[1] C. A. D. 522.

United States Court of Customs and Patent Appeals, April 15, 1953

*John F. Kavanagh* for appellant.

*Charles J. Wagner,* Acting Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

[Oral argument February 10, 1953, by Mr. Kavanagh and Mr. FitzGibbon]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

COLE, Judge, delivered the opinion of the court:

The United States Customs Court, Second Division, denied a motion by appellant's attorney to punish Messrs. Higman and Corey, two employees of the appellee in the Treasury Department, Bureau of Customs, for contempt. This appeal presents that decision for review.

The conclusion we have reached requires but a brief preliminary statement. However, the rather unique and unusual nature of the proceedings, and the all too lengthy record—consuming considerable time and containing much irrelevant matter—justifies a chronological recital thereof.

The opinion below contains this clear and accurate statement which will suffice for such purpose: "It appears that T. W. Holt & Company was the ultimate consignee of two importations of straw brooms. Each of these importations was consigned to Kenneth

Kittleson, as customhouse broker, who entered the merchandise at its invoiced value. At the time of entry, Kittleson declared that he was not the actual owner of the merchandise involved in each importation, the true owner being stated as T. W. Holt & Company; but no owner's declaration such as is provided for in section 485 (d) of the Tariff Act of 1930 was filed. The appraiser advanced the entered values and assessed increased and additional duties against the importations. These were paid by T. W. Holt & Company, the actual owner and ultimate consignee of the merchandise. The appraised values having been sustained in appeals for reappraisement filed by T. W. Holt & Company, the said company petitioned this court for the remission of the additional duties, and, after a trial of the pertinent issues, a judgment was entered decreeing that the petition of T. W. Holt & Company be granted. The foundation upon which the instant motion is laid is that the said Higman and Corey have themselves declined to comply with a judgment of this court and have directed the Collector of Customs at Tampa, Fla., and his office not to comply with said judgment."

The petitioner contends that the judgment in the remission case was final and conclusive, and when any employee of the United States interfered with the enforcement of that judgment, such as it is claimed the alleged contemnors did in this instance, then they would be obstructing the process of the court, and under section 401 [18 U. S. C. 401, Supp. IV, 1946] of Title 18 of the United States Code could be punished for contempt. The Government, on the other hand, takes the position that the judgment was not final and conclusive and argues strenuously to the effect that the petitioner in the remission proceeding was not the proper party to whom the money should be paid.

The remission proceeding which formed the basis for the maneuvers herein discussed was a formal proceeding instituted and tried against the defendant herein, the United States Government. The allegations thereof were clear to the effect that the petitioner was entitled to and claimed the additional duties imposed as aforesaid. The Government was represented by the Attorney General of the United States and no complaint of petitioner's status to so claim the said refund in lieu of the broker, Kittleson, or anyone else, was entered, but it was virtually conceded that judgment for the petitioner was proper. While no specific amount of refund was set forth in said petition or final judgment, there was no secret as to what amount was involved. Almost immediately after the judgment became final, the amount thereof, being a mere mechanical operation, was computed by the collector's office and the petitioner notified thereof.

In the recent case of *Schenley Distilleries, Inc.* v. *United States,* [decided March 11, 1953] 40 C. C. P. A. (Customs) 202, we said: "The collector had no further function to perform except the purely

formal reliquidation, and the strictly clerical task of computing the gallonage. He had no decision to make." While we were dealing in the *Schenley* case with a protest brought under a provision of the Tariff Act different from that involved in these proceedings, there is a similarity in the meaning of the judgment entered in each instance as to its purpose and intent which we recognize as clearly apparent.

We are cognizant of the cited cases of *Les Parfums De Molyneux* v. *United States*, 26 C. C. P. A. (Customs) 323, C. A. D. 36 in which the court said, "in strictness the court does not adjudge refund or remission but adjudges facts upon which the collectors of customs base their subsequent acts," and of *E. H. Corrigan* v. *United States*, 35 C. C. P. A. (Customs) 10, C. A. D. 364, wherein the court said, "The burden of appellant's argument is that the regulation, statute, and judgment of the court in the remission case contemplate the payment of the additional duties to the person who paid them. This is fallacious reasoning because an outsider may have paid them and he might have been wholly unrelated to the transaction in any way except that he furnished the money. Ordinarily, the party who pays additional duties and gets a judgment for remission receives a return of the money; but where the party paying the money, acting for his customer or client, files notice of ownership as provided for in the statute, he divests himself of any right to claim that he is entitled to the repayment of additional duties. The situation would be quite different were it not for the filing of the declaration of ownership, which in this case we think is a controlling consideration."

Completely in line with the reasoning of the foregoing authority, it appears to us that a judgment in a remission proceeding, such as the case before us, should be accepted as final and binding as to the amount due thereunder, and the party to whom the same should be paid. It should not be (as we found nothing in the statutes discussed in connection with the controversy to the contrary) the prerogative of a defendant, certainly not the Government, to enter litigation as was done here, and meeting the issues squarely and solely as to whether the petitioner was entitled to the additional duties being refunded as claimed, to thereafter decline to accept the responsibility of paying because of some apparently overlooked statutory provision that could, and maybe should, have been invoked during the trial of those proceedings. The petitioner has not been criticized for the claim he presented, or the manner in which he proceeded. Under the circumstances, it is apparent that he is entitled to settlement, and the Government in so doing would be but setting an example of fairness that all litigants, in like situations, should emulate. It would be advisable, we feel, if judgment orders in remission cases would include therein the amount involved, thereby merely requiring that which is known or can be determined preliminary to submission for decision to be a

matter of record in the litigation involving principally that very question.

Whether the judgment being discussed is final or not is, as we see it, not in issue before us. The controlling question, in fact the sole question, is whether the two employees of the Treasury Department should be held in contempt because the petitioner has not collected his money, presumably because of the reasons and recommendations expressed by Messrs. Higman and Corey in what we accept as an act on their part considered to be in the honest discharge of their .duties. It is not our prerogative in this appeal to say that high officials in the Government advising their superiors as to what they consider the law to mean, and that advice resulting in delay in the final settlement of the dispute, should be cited as in contempt of the court awarding the judgment under discussion. It would be just as untenable to also include the Attorney General who advises and argues just as strenuously in support of the employees' reasoning. The United States Customs Court, like all federal courts, has abundant and adequate powers, as it should have, to punish for contempt any and all guilty thereof. That does not mean such a reckless disregard for the rights, as in this instance, of employees of the Government who see a situation and express it differently than a court might have adjudged.

We do not embrace, however, the argument advanced by Government counsel during the oral argument that the employees mentioned are immune from contempt proceedings because of the provisions of section 513 [1] of the Tariff Act of 1930 [19 U. S. C. 1513]. Such could never have been intended by Congress. In fact, we would find no hesitancy in questioning the constitutionality of any statute which would arbitrarily provide that regardless of the act or conduct, one otherwise guilty of contempt of our courts could not be so charged.

Summing up as our research of the law applicable to contempt indicates, 17 C. J. S. Contempt 19, aptly states: "It is essential to constitute a contempt that the thing ordered to be done be within the power of the person against whom the order is directed. * * * To constitute contempt for disregard of an order requiring the payment of money, there must exist an ability to comply therewith." Certainly, no translation of the record before us in the instant case is required for anyone to recognize the applicability and controlling decisiveness of that ruling.

It was stated during oral argument of this case that an early and complete end of this litigation was intended after this decision because

---

[1] No collector or other customs officer shall be in any way liable to any owner, importer, consignee, or agent or any other person for or on account of any rulings or decisions as to the appraisement or the classification of any imported merchandise or the duties charged thereon, or the collection of any dues, charges, duties on or on account of said merchandise, or any other matter or thing as to which said owner, importer, consignee, or agent might under this Act be entitled to protest or appeal from the decision of such collector or other officer.

the General Accounting Office was expected to then make its reply to the pending inquiry from the collector. That such will be a fact is, we think, highly to be desired in this already long pursuit to justice.

We find it unnecessary to discuss the record further. While our reasoning is not in agreement with that disclosed by the United States Customs Court for rejecting the petition in question, its conclusion refusing to cite the alleged contemnors is correct and is hereby *sustained*.

WORLEY, J., concurs in the conclusion.